**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TERENCE CULPEPPER,

    Plaintiff,

v.

MARYJEAN CULPEPPER, et. al.,

    Defendants.

Civil Action No: 02 CV 2963
02 CV 3902

**OPINION**

Terence Culpepper
P.O. Box 105
Oakland, New Jersey 07436
*pro se*

Maryjean Culpepper
5 Webb Ct.
Park Ridge, New Jersey 07656-2426
*pro se*

Christoper C. Botta
Huntington Carver, L.L.P.
312 Kinderkamack Road
Westwood, New Jersey 07675

Diane M. Lamb
Office of the New Jersey Attorney General
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

Page 1 of 17

John Altieri
25 East Salem Street
P.O. Box 279
Hackensack, New Jersey 07602-0279

Michael R. Scully
20 Court St. 2nd Floor
Hackensack, New Jersey 07601

**MARTINI, DISTRICT JUDGE:**

Presently before this Court are motions to dismiss the two consolidated complaints filed on behalf of the following Defendants: Judge Marguerite Simon, Judge Bruce Gaeta, Rem Zeller Law Group, Joseph Rem, Robert Zeller, Theresa Doyle, ERA Burgdorf Realtors, Mary Ellen Flannery, Randolph Wine, Peter Jeffer, Mary Jean Culpepper, Bergen County, Frank Risse, and Catherine Risse. In addition, a Motion for Summary Judgment was filed on behalf of Defendants Captain Robert Hammerle, Chief James O'Connor, Borough of Oakland, Officer Mark Piercy, Borough of Oakland Police Department, Officer Frank Fiori, John Conte, Jr., and Officer Brian Coglin.

The allegations in each separate complaint (02-CV-2963 and 02-CV-3902) are connected to events that transpired after the death of Hugh Stephen Culpepper, the father of Plaintiff Terence Culpepper and one of the Defendants, Mary Jean Culpepper. Following the father's death, brother and sister Culpepper were named executors of the estate, which consisted of the deceased's home where Plaintiff resided at the time of his father's death. The complaints filed by Terence Culpepper arise from inter-familial disputes regarding the appropriate handling of the Culpepper estate.

## STANDARDS OF REVIEW

**A.     *Motion to Dismiss***

In deciding a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), the Court must accept as true all allegations made in the complaint, and construe the allegations in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If it appears that no relief could be granted "under any set of facts which could prove consistent with the allegations," then a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). With respect to a *pro se* litigant, the court must "find it is clear 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

**B.     *Summary Judgment***

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a Court must construe the facts and inferences in a light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Once the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. No issue for trial exists unless the nonmoving party can adduce sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Anderson*, 477 U.S. at 249.

## DISCUSSION

**A.     *Complaint Against Municipal Defendants* (02-CV-2963)**

On June 22, 2001, at Defendant Mary Jean Culpepper's request, Defendant Officers Hammerle, Piercy and Fiori accompanied her to the Culpepper house.[1] When the Defendants arrived, Plaintiff, who was living at the house, explained to them that because some of his personal property had been stolen from the house, Defendant Mary Jean Culpepper "was not entitled to unannounced visits whenever she pleased." 02-CV-2963 Complaint, at ¶ 17. The Defendant Officers eventually left, but Defendant Mary Jean Culpepper remained at the house. Later that same day, Defendant the Borough of Oakland Police Department received a call from Defendant Mary Jean Culpepper, who reported that she was at the Culpepper home and that the Plaintiff had threatened to kill her at gunpoint. The Defendant Officers were dispatched to the scene, and Plaintiff Culpepper was arrested. He was charged with the following:

---

[1]     The Complaint contains allegations that certain Defendants appeared at the Culpepper house on other days prior to June 22, 2001. However, it does not appear that this conduct is associated with the constitutional violations that Plaintiff alleges.

> (1) threatening to kill Defendant Mary Jean Culpepper or placing her in imminent fear of death, in violation of N.J.S.A. 2C:12-3b;
> (2) unlicensed possession of an assault firearm, in violation of N.J.S.A.2C:58-5, 2C:58-12, 2C: 58-13, and 2C:39-5f; and
> (3) possession of a large capacity ammunition magazine in violation of N.J.S.A. 2C:39-3j.

Municipal Defendants' Stmt. of Facts, at ¶ 10. The weapons possession charges later were dismissed. *See* 02-CV-2963 Complaint, at ¶ 39. On April 10, 2003, Plaintiff was found guilty of violating N.J.S.A. 2C:12-3(b), "Terrorist Threats," by a jury in the Superior Court, Criminal Part, Bergen County. *See* Certification of Christopher Botta ("Botta Cert."), at ¶ 3. Prior to his conviction, Plaintiff filed a civil rights complaint in federal court alleging false arrest, malicious prosecution, and other constitutional violations.

### A1.   *Section 1983 False Arrest Claim Against Municipal Defendants*

Plaintiff's complaint (02-CV- 2963) alleges a claim for false arrest under Section 1983 against the Defendant Officers. A Section 1983 claim requires a plaintiff to show that a defendant who acted under the color of state law deprived him or her of a constitutional or federal statutory right. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002). To succeed on a Section 1983 false arrest claim, Plaintiff must show that the police did not have probable cause to arrest. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause exists when police officers rely upon trustworthy information that would lead a reasonably prudent person to believe the arrested party committed the crime. *Id.* An officer acting with probable cause, even if such a belief is mistaken, is entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). On a motion for summary judgment, the court may find "that probable cause exists as a matter of law if the evidence viewed most favorably to Plaintiff would

not support a contrary factual finding." *Merkle v. Upper Dublin High School*, 211 F.3d 782, 788-89 (3d Cir. 2000).

In the present case, the Defendant officers contend that they were dispatched to the Culpepper house on June 22, 2001, after Defendant Mary Jean Culpepper called the Borough of Oakland Police Department to report that her brother had threatened to shoot her with a gun. *See* Municipal Defendants' Stmt. of Facts, at ¶ 4. Officer Hess arrived first on the scene, observed Plaintiff driving away from the house, and ordered him to stop. *See id.* at ¶ 6.[2] After Plaintiff complied with this order, he was advised to remain in his vehicle with his hands outside of the window. *See id.* at ¶ 8. Once other police units arrived, Plaintiff was placed under arrest. At the time of his arrest, Plaintiff informed the officers that there were weapons in his vehicle. A rifle and handgun were found on the rear seat. *See id.* at ¶ 9.

The Court has thoroughly reviewed Plaintiff's submissions, including the *pro se* complaint and Plaintiff's "Statement of Material Facts," and concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether the Defendant Officers acted with probable cause. Plaintiff does not dispute that on June 22, 2001, Mary Jean Culpepper called the Borough of Oakland police department and reported that Plaintiff had threatened her with a weapon. Furthermore, Plaintiff does not dispute that he drove away from the Culpepper house as one of the officers arrived at the scene, or that the officers found weapons in his car when they detained him. Significantly, Plaintiff does not deny that he threatened his sister with harm. In short, Plaintiff neither contests Defendants' factual assertions nor offers a competing version of the

---

[2]  Plaintiff does not identify Officer Hess as one of the defendants in this case. Defendants' submissions show that Hess, Fiore, Haemmerle, and Piercy were involved in Plaintiff's arrest. The complaint fails to indicate with any specificity the extent of O'Connor and Coglin's involvement in the events of June 22, 2001.

facts leading up to his arrest. Plaintiff's complaint scarcely mentions the events directly preceding his arrest, and thus the complaint provides little insight into Plaintiff's version of events.[3]

When viewed in light most favorable to the Plaintiff, the factual record establishes that the Defendants had probable cause to arrest Plaintiff on June 22, 2001. It was appropriate for the Officers to rely upon the information that Mary Jane Culpepper provided the Borough of Oakland dispatcher – namely, that Plaintiff had threatened to cause her harm and was armed with a weapon. This information afforded the Defendant Officers with a sufficient basis to stop and detain Plaintiff after he left the Culpepper house as the Defendant officers arrived at the scene. Furthermore, when the Defendants detained Plaintiff, they found a firearm lying on the backseat of the car, and, subsequently, Plaintiff told the Defendants that another gun was in the car. Given the totality of the circumstances, the facts available to the Defendant Officers at the time of Plaintiff's arrest are "sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Sharrar v. Felsing*, 128 F.3d 810, 817 (3d Cir. 1997). Accordingly, the Defendant Officers acted with probable cause when they arrested Plaintiff for violating the weapons possession statutes and for threatening to harm Mary Jean Culpepper.[4]

---

[3] Paragraphs 39 and 40 of the Complaint mention the weapons possession charges in the context of accusing the Defendants of failing to ask Plaintiff his version of the events. It is not clear if the "event" to which Plaintiff refers is the day of his arrest, or some other day when police officers had been called to the Culpepper house. The Complaint identifies a number of dates, both prior to and after June 22, 2001, at which time Plaintiff had contact with the Defendant Officers.

[4] Presumably in reference to the false arrest claim, Plaintiff asserts that "[n]one of the defendant's [sic] named above investigated any of the charges against me." Plaintiff's Memorandum, at p. 2. Even assuming the truth of this statement, the issue of whether the Defendant police officers conducted an investigation after Plaintiff's arrest is immaterial to whether probable cause existed at the time of Plaintiff's arrest. Thus, this assertion does not provide a disputed issue of material fact which would defeat Defendants' motion of summary

*A2.    Section 1983 Malicious Prosecution Claim Against Defendant John Conte, Jr.*

Plaintiff alleges that John Conte, Jr., maliciously prosecuted him on the charges for which Plaintiff was arrested. In order to succeed on a malicious prosecution claim, Plaintiff must demonstrate that: "(1) defendants initiated a criminal proceeding against [him]; (2) which resulted in a seizure; (3) the criminal prosecution ended in [his] favor; (4) the criminal prosecution was initiated without probable cause; and (5) defendants acted maliciously or for a purpose other than bring the criminal defendant to justice." *Luthe v. City of Cape May*, 49 F. Supp.2d 380, 392 (D.N.J. 1999) (*citing Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998)). With respect to the third element of a malicious prosecution claim, a convicted plaintiff must show that his conviction has been either reversed, expunged, declared invalid, or is under review by a writ of habeas corpus in order to bring a claim for damages. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In the present case, on April 10, 2003, a jury in Superior Court, Criminal Part, Bergen County found Plaintiff guilty of violating N.J.S.A. 2C:12-3(b), the statute prohibiting "Terroristic Threats."[5] *See* Botta Cert., at ¶3. There is no evidence that this conviction has been reversed, expunged, declared invalid, or granted review by a writ of habeas corpus. Moreover, there is no allegation or evidence that the conviction was obtained through fraud, perjury or corruption. Under these circumstances, Plaintiff has not satisfied one of the essential elements of a malicious prosecution cause of action, and thus summary judgment is appropriate for Plaintiff's

---

judgment on the false arrest claim.

[5]     Specifically, the provision under which Plaintiff was convicted states that a "person is guilty of a crime in the third degree is he threatens to kill another with purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out." N.J.S.A. 2C:12-3(b).

claim against Defendant Conte for the terrorist threats' prosecution.

In his opposition brief, Plaintiff does not mention his arrest and prosecution for terroristic threats, but rather focuses on the weapons possession charges asserted against him. More specifically, Plaintiff claims that Defendant Conte should have investigated these charges prior to presenting the case at the probable cause hearing. Defendants contend that Conte is entitled to absolute immunity from liability.

Prosecutors are absolutely immune for actions performed in their official functions. *Imbler v. Pachtman*, 424 U.S. 430-31 (1976). Absolute immunity applies to all acts that are "intimately associated with the judicial phase of the criminal process." *Id.* at 430. By contrast, a prosecutor acting in an administrative or investigate capacity is protected by qualified immunity. *Id.* at 431 n.33. To determine whether a prosecutor's conduct is shielded by absolute immunity, courts engage in a "functional" analysis, which looks to the nature of the function performed. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotations omitted). In the present case, Defendant Conte's decision to initiate a criminal prosecution and to present evidence at a probable cause hearing are typical prosecutorial activities, and thus are protected by absolute immunity. Accordingly, summary judgment is granted in favor of Defendant Conte on all allegations of malicious prosecution for the weapons charges.

### A3.   *Section 1985 and 1986 Claims Against Municipal Defendants*

Plaintiff appears to allege a Section 1985 complaint against the Defendants. A Section 1985 claim requires proof of a conspiracy motivated by discriminatory animus, as well as an overt act and an injury. *White v. Williams*, 179 F.Supp. 2d 405, 421 (D.N.J. 2002) (*citing Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)). Plaintiff does not allege in his Complaint that

Defendants acted with discriminatory animus. Absent this essential element, Plaintiff's Section 1985 claim is dismissed.

A claim under Section 1986 demands a prerequisite finding of a discriminatory conspiracy pursuant to Section 1985. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (*citing Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981)). As explained above, Plaintiff fails to allege that Defendants acted with discriminatory animus. Therefore, Plaintiff's claim under Section 1986 is dismissed.

### *A4. Liability Against the Borough of Oakland and the Borough of Oakland Police Department*

Plaintiff seeks to hold the Borough of Oakland and the Borough of Oakland Police Department liable for the constitutional violations committed by the Defendant Officers. A municipality cannot be held liable under Section 1983 on a theory of *respondeat superior* or vicarious liability. Rather, a Plaintiff must show that the enforcement of some official policy or custom resulted in a constitutional violation suffered by the party. *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

The Court has carefully examined the *pro se* complaint and Plaintiff's opposition brief. While Plaintiff's brief has cited the appropriate legal standard for municipal liability, Plaintiff has failed to identify an edict or proclamation issued by Borough of Oakland police officials or a custom or policy condoned by the Defendants that resulted in the alleged constitutional violations. Absent allegations and evidence of a specific policy that caused a constitutional violation, Plaintiff's claims against the Borough of Oakland and the Borough of Oakland police

department are dismissed.

**A5.    *Fourth, Fifth and Fourteenth Amendment Claims Against Municipal Defendants***

Plaintiff broadly asserts violations of his Fourth, Fifth and Fourteenth Amendment rights. However, such claims must be brought under a specific statute and not directly under the constitution. *Aiken v. Twp. of Morris*, 1990 WL 119312, at *2 (D.N.J. Aug. 14, 1990)(*citing Curry v. A.H. Robins Co.*, 775 F.2d 212, 220 (7th Cir. 1985)). Therefore, Plaintiff's claims under Section 1983 are the appropriate means of seeking relief and any claims brought directly pursuant to the Constitution are dismissed.

**A6.    *Allegations Against Defendant Mary Jean Culpepper***

Plaintiff claims that his sister violated his Fifth and Fourteenth Amendment rights when she submitted false information to the police, which resulted in Plaintiff's arrest and detention for making terroristic threats. Because Defendant Culpepper, as a private party, cannot be held liable for alleged constitutional deprivations under Section 1983, all claims against her in reference to Plaintiff's wrongful arrest and prosecution are dismissed.

**B.    *Complaint Against Defendants Involved in Culpepper Estate Administration* (02-CV-3902)**

On July 5, 2001, Defendant Mary Jean Culpepper, represented by Defendant Peter Jeffer, filed a complaint in Bergen County to remove Plaintiff as co-executor of their father's estate. *See* 02-CV-3902 Complaint, at ¶ 34. The state court complaint alleged that Plaintiff refused to cooperate in the administration of the estate, and that he had threatened to shoot Defendant. On or about August 2, 2001, Plaintiff filed a separate complaint in Bergen County to have Defendant Culpepper removed as co-executor. *See id.* at ¶ 38. Defendant Theresa Doyle is Special Probate

Counsel in Bergen County, responsible for supervising the Superior Chancery Division, Probate and for overseeing all Superior Court Probate actions. Apparently, Defendant Doyle physically accepted the documents Plaintiff filed with the Court.

On August 10, 2001, Defendant the Honorable Marguerite T. Simon, J.S.C. removed Plaintiff as co-executor and ordered him to leave the house by September 7, 2001. *See* Brief of Defendants' Simon and Gaeta ("Simon Brief"), at p. 4. Plaintiff then retained counsel, and filed for reconsideration of that decision. On September 21, 2001, Defendant Judge Simon not only affirmed her prior decision, but also removed Defendant Mary Jean Culpepper as co-executor and appointed an independent third-party, Defendant Joseph Rem, Esquire, as sole executor. *See* 02-CV-2963 Complaint, at ¶ 51. Plaintiff filed an appeal with the Appellate Division, and on October 3, 2002, Judge Simon's order removing both Plaintiff and Defendant Mary Jean Culpepper as executors was affirmed.

Upon appointment, Defendant Rem retained Defendant Rem Zeller Law Group as attorneys to represent the estate. Defendants Robert Zeller and Rem are shareholders in the Rem Zeller Law Group. Defendant ERA Burgdorf Realtors was hired by Defendant Rem to list the Culpepper home. Defendant Mary Ellen Flannery served as the listing agent, and Defendant Randolph Wine acted as the listing broker. Defendant Rem contracted for the sale of the Culpepper home to Defendants Frank Risse and Catherine Risse.

Plaintiff's complaint also notes that on September 11, 2001, Plaintiff was scheduled to be arraigned before Defendant the Honorable Bruce A. Gaeta, J.S.C. regarding the criminal charges against him for the June 22, 2001, incident that is the subject of Plaintiff's companion civil rights case. Although this hearing was adjourned, Judge Gaeta raised Plaintiff's bail from $10,000 to

$25,000 and ordered him to vacate the Culpepper estate that day, otherwise a warrant would be issued for his arrest.

Plaintiff's federal civil rights complaint alleges that each of the named Defendants conspired to remove Plaintiff as co-executor and to sell the Culpepper home, thus violating Plaintiff's "right to due process." Plaintiff demands declaratory, injunctive, and compensatory damages. Most of the text of the Complaint appears to incorporate legal arguments that previously were presented to the New Jersey state courts regarding Plaintiff's removal as executor of the Culpepper estate.

**B1.** ***Civil Rights Claims against Defendants Judge Marguerite Simon and Judge Bruce Gaeta***

Plaintiff broadly asserts civil rights violations against Defendants Judge Marguerite Simon and Judge Bruce Gaeta pursuant to 42 U.S.C. § §1983, 1985, 1986, and 1988. *See* 02-CV-3902 Complaint, at ¶ 1. Generously construed, the Complaint alleges that Judge Simon violated Plaintiff's Fourteenth Amendment Due Process rights when she ordered Plaintiff's eviction from the Culpepper house and his removal as executor of the Culpepper estate. Judge Geata allegedly violated Plaintiff's Fourteenth Amendment Due Process rights when he "enforce[d] a civil matter and evict[ed] the Plaintiff and threaten[ed] to jail him if he did not leave his home immediately." *Id*. at ¶ 117. Defendants argue, among other things, that Judges Simon and Gaeta are entitled to absolute immunity. *See* Simon Brief, at p. 15.

"It is a well-settled principle of law that judges are generally immune from a suit for money damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in

excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)(citation omitted). On the other hand, a judge is not immune from liability for nonjudicial actions and for actions taken in the complete absence of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

In the present case, all of the actions allegedly committed by Judges Simon and Gaeta – namely, conducting hearings and issuing and signing orders– were judicial in nature. *See Stump*, 435 U.S. at 363-64 ("Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity."). Furthermore, although Plaintiff asserts that the Defendant Judges "lacked subject matter jurisdiction" (*see* Plaintiff's Brief, at p. 8), the allegations in the Complaint do not indicate that either Judge Simon or Judge Gaeta acted in the clear absence of all jurisdiction. As Judges of the Superior Court of New Jersey, Defendants Simon and Gaeta were empowered to handle the matters before them that involved the Plaintiff. To the extent that Plaintiff alleges that the Defendant Judges improperly decided Plaintiff's state court matters, any legal errors do not establish that they acted in the clear absence of jurisdiction. *See id.* at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). Accordingly, Defendants Simon and Gaeta are entitled to absolute immunity and Plaintiff's claims for monetary relief against them are barred.

Section 1983 precludes injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff's Complaint fails to allege that either of these conditions has been met, and therefore his claim for injunctive relief against Defendant Simon and Gaeta is dismissed as well.

**B2.**   ***Allegations Against the Private Individuals***

A liberal reading of the complaint suggests that the named private parties conspired with Judge Simon, who ordered Plaintiff evicted from the Culpepper house and removed as co-executor of the Culpepper estate. This conspiracy allegedly resulted in the deprivation of Plaintiff's Fourteenth Amendment Due Process rights, specifically his property rights in the Culpepper house. The conspiracy allegations are necessary in order for Plaintiff to attempt to establish that the private individuals were acting "under color of state law" for purposes of pleading a Section 1983 claim. *See Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990) (stating that private parties who conspire with state officials to deprive an individual of his or her constitutional rights are acting "under color of state law.").

In the present case, Plaintiff has alleged no specific facts to support the otherwise bare assertions that the private parties conspired with Judge Simon to deprive Plaintiff of his property. "A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of the underlying facts." *Moyer v. Borough of North Wales*, 2000 WL 875704, at *2 (E.D. Pa. June 22, 2000)(*citing Flanagan v. Shively*, 783 F.Supp. 922, 929 (M.D.Pa.), *aff'd*, 980 F.2d 722 (3d Cir.), *cert. denied*, 510 U.S. 829 (1993)). The Complaint contains no allegations or factual support that the private parties entered into an agreement with Judge Simon or that an agreement to deprive Plaintiff of his rights even existed. The mere fact that Defendants Mary Jean Culpepper, Jeffer, Flannery, Wine, Rem, Zeller, the Risse's, ERA Burgdorf, and the Rem Zeller Law Group were involved, in various capacities, in the sale of the Culpepper house or the administration of the Culpepper estate in no way implicates them in a conspiracy to deprive Plaintiff of his constitutional rights.

Likewise, Defendant Doyle's conduct – filing Plaintiff's court documents for his case that was heard by Defendant Judge Simon – does not provide a factual basis by which the Court can infer a conspiracy. Accordingly, the Complaint fails to state a claim for a Section 1983 conspiracy against the private parties.[6]

### B3. Section 1983 Claim Against Defendant Bergen County

Plaintiff alleges that Defendant Bergen County is liable for the acts of Defendants Simon and Gaeta under the doctrine of *respondeat superior*. *See* 02-CV-3902 Complaint, at ¶ 17. However, these Defendants are employed by the State of New Jersey, not by Defendant Bergen County. Furthermore, even if the Defendant Judges were county employees, Bergen County cannot be held liable under a theory of *respondeat superior* or vicarious liability. *See* Section A4., *supra*. Thus, Bergen County is dismissed from this action.

### CONCLUSION

Judge Marguerite Simon, Judge Bruce Gaeta, Rem Zeller Law Group, Joseph Rem, Robert Zeller, Theresa Doyle, ERA Burgdorf Realtors, Mary Ellen Flannery, Randolph Wine, Peter Jeffer, Mary Jean Culpepper, Bergen County, Frank Risse, Catherine Risse, Captain Robert Hammerle, Chief James O'Connor, Borough of Oakland, Officer Mark Piercy, Borough of

---

[6] To the extent that Plaintiff has asserted a state law claim for slander against Defendant Rem Zeller Law Group, this allegation must be dismissed as a matter of law because it is protected by the litigation privilege. Plaintiff claims that Defendant Rem Zeller Law Group made slanderous statements about Plaintiff in a Respondent's Brief filed with the New Jersey Supreme Court. This brief was filed in support of a motion to deny certification of Plaintiff's appeal of his removal as co-executor.
Litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Thomas v. Ford Motor Co.*, 137 F.Supp.2d 575, 582 (3d Cir. 2001) (quoting *Hawkins v. Harris*, 141 N.J. 207, 216 (1995)). Defendants' Brief clearly satisfies all four elements, and thus any statements in the brief are immune from liability.

Oakland Police Department, Officer Frank Fiori, John Conte, Jr., and Officer Brian Coglin are dismissed entirely from this action and Plaintiff's consolidated Complaint is dismissed in its entirety.

Dated: 7/11/03

William J. Martini, U.S.D.J.